LUHRING, J.
This is a suit in equity under Sec. 63, Title 35 U. S. C. A. (R. S. 4915), wherein the plaintiff seeks to compel the Commissioner of Patents to issue a patent to him for improvements in a “See-Saw Moistener” in accord with his application therefor filed on the 21st day of June, 1924, bearing serial number 721,437.
The invention relates to an adhesive label or tape moistening machine in which the adhesively coated tape is fed from a supply reel past a moistening brush, and, to press the tape *45 against the brush, provision is made for a presser plate, which is fixedly mounted, though removable. Provision is also made for yieldingly urging the brush upward against the presser plate and such means consists specifically of a see-saw support for the brush at one end and a weight at the other to swing the brush up against the presser plate, thus rendering the brush self-adjusting for wear.
It appears from the bill that twenty-three claims were finally refused by the Patent Office, but the plaintiff amends his bill by withdrawing or waiving eight of such claims, viz., claims numbered 2 to 5 inclusive, 7, 19, 22 and 23, thus leaving for the consideration of the Court claims numbered 1, 6, 8, 9, 18, 20, 21, 24, 29, 30, 31, 32, 33, 34 and 35. Of these, claims 29, 32, 34 and 35 were refused on the grounds of estoppel growing out of the failure of the plaintiff to properly comply with Rule 109 of the Rules of Practice of the United States Patent Office.
Claims 1, 6 and 24 are illustrative, and read as follows:
1. In a label moistening machine, a moistening couple comprising a brush and a presser plate, and means yieldingly urging the brush against the presser plate.
2. In a label moistening machine, a tank, a capillary brush in the tank, and a presser substantially horizontally slidable to and from position over the brush means to hold the presser in fixed vertical position above the tank, and means within the tank yieldingly urging the brush against the presser to form with the presser a moistening couple.
24. A device for moistening adhesive or gummed strips comprising in combination a reservoir, means to guide a strip across the same, a plate beneath which a strip passed, a brush partially submerged in said reservoir below said plate and with its hairs or bristles upwardly extending, and counter-weigh ting means operatively connected to said brush to urge the same yieldingly into contact with said plate in position to moisten a strip passed between the latter and the brush.
The Court finds that claims numbered 1, 6, 8, 9, 18, 20, 21, 24, 30, 31 and 33 are not patentable over the prior art, as exemplified by the following patents:
*46 Colvin 759,675 May 10,1904
Kreuger 1,194,752 August 15, 1916
Rideout 1,314,216 August 26, 1919
The Colvin patent discloses a device in which a gummed strip is guided beneath a plate 12a and over a moistener comprising a strip of sponge 15d or other fibrous material. The lower end of the moistener strip is immersed in a body of water and the moistener is forced upwardly against the under side of the gummed strip by a lever arrangement including the counterweight 14.
With the exception of claim numbered 31, all of the claims now under consideration substitute a brush for the strip of sponge in the Colvin patent. Claim numbered 31 provides for a “capillary moisture applying element.” In the Kreuger patent a brush is used as the moistening element.
Furthermore, with the exception of claims 9, 31 and 33, all of these claims provide for means yieldingly to urge the brush upward to moisten the strip, in substantially that language. Claims 31 and 33 require means to provide a relative adjustment between the moistening element and the surface extending across the brush. In claim 9 provision is made for “a presser over the brush to form a moistening couple therewith.”
In the Colvin'patent there are means yieldingly to urge the moistening element upward to moisten the strip.
The plaintiff urges that the patent to Colvin does not show a moistening couple-comprising a stationary plate, the moistening element pressed there against, because the plate 12a does not extend over the end of the moistening element, but is provided with a cut out hole h through which the moistening element projects, and claims that the Patent Office made a mistake in its interpretation of this reference.
In the description of the Colvin invention, at lines 27-45, it is said:
“In the forward transverse edge of the lid 12a, that is adapted to latch upon the corresponding top edge of the water-chamber 12, an opening is formed at the transverse center *47 thereof having a width that affords lateral clearance for the side edges of the member 15 of the bent arm, so that a paper strip may be drawn through this opening, have contact with the fibrous material 15d, and be guided by the side edges of said opening.
“On the inner side of the lid 12a two spaced guide-strips 16 are secured that extend longitudinally and near the front ends of the guide-strips an opening h is formed in the lid that cuts through the front transverse edge of the latter, this opening and the spaced guides 16 being disposed directly above the fibrous pad 15d.”
The Kreuger patent discloses an inverted brush, the lower end of which is immersed in water and the upper end or tip of which is held in contact with an overlying plate 14 by the pressure resulting from the weight of the plate. The water tank is covered by a plate 6 which serves as a guiding means for the gummed stickers or labels as they are moved between the brush and plate 14. The rear edge of the plate 14 is curved upwardly as shown at 14a to permit the passage of labels between the cover member 6 and the plate 14.
It is observed that the only essential difference between the Kreuger patent and the plaintiff’s claims is that in the claims here presented means yieldingly urging the brush against the plate are provided for, whereas in the Kreuger patent plates 14 “normally rest lightly upon the upper ends of the brushes 4, being held in position by the action of gravity, although they can easily be lifted out of position at any time.” (Lines 52-56 Kreuger.)
The Rideout patent makes provision for a stationary plate or platen, beneath which a strip of tape is fed, and means by which to yieldingly press the moistening element up against the under surface of this strip of tape. Here it is observed that the upward movement of the moistening element is limited by the overlying plate or platen. Spring 28 of the Rideout patent serves the same purpose as a weight, in that by means of this spring “the moistener is pressed upwardly against the unyielding platen with sufficient pressure . . . upon the tape strip during the moistening operation to thor *48 oughly incorporate the gum and water.” (Lines 78-83 Ride-out.)
In view of the foregoing reference, the Court finds that the claims 1, 6, 8, 9, 18, 20, 21, 24, 30, 31 and 33 are not patentable, and, therefore, it is adjudged that the plaintiff is not entitled to receive a patent for his invention as specified in such claims.
Claims 29, 32, 34 and 35 were finally refused by the Patent Office solely on the ground of estoppel. Because of this refusal, the plaintiff had the right to proceed here by bill in equity under Sec. 63, Title 35 U. S. C. A. (R. S. 4915), Pitman v. Coe, Commissioner, App. D. C., decided December 11, 1933. The claims were, as a matter of fact, presented in the Patent Office, and were passed upon by that office. Lucke v. Coe, Commissioner, App. D. C., decided February 5th, 1934.
In this proceeding the Court is required to consider the merits of the claims and “may adjudge that such applicant is entitled according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear.” (R. S. 4915.)
Mr. Kreuger has succeeded in perfecting a practical gummed paper tape serving machine for use in wrapping packages. Not only do his devices serve heavy or stiff tape for use on large and weighty packages, but thin gummed tissue tape, such as, for example, celophane tape.
The Better Packages, Inc., with which Mr. Kreuger is actively connected, has been engaged in the business of manufacturing machines for dispensing this tape since the year 1920, and is the leader in that field. The claims now under consideration were held to be patentable by the Board of Appeals of the Patent Office, but, as stated, were refused on the ground of estoppel. The board held that such claims were “quite specific” to plaintiff’s device, and the court agrees with that conclusion. I find, therefore, that the plaintiff is entitled to receive a patent for his invention as specified in claims 29, 32, 34 and 35, and it is so adjudged.
Counsel will please prepare proper decree.